**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| TIMOTHY RAY,<br><br>        Plaintiff,<br><br>vs.<br><br>AUSTIN INDUSTRIAL, INC.,<br><br>        Defendant. | Case No. 3:18-cv-00392-JMC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, TO STAY** |

### REPLY AND MEMORANDUM IN SUPPORT

Defendant Austin Industrial, Inc. ("Defendant" or "Austin") hereby submits this Reply in support of its Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay. As demonstrated below, the arguments in Plaintiff Timothy Ray's Response completely lack merit, and Plaintiff should be compelled to arbitrate his claims as he agreed to do.

### I.    ARGUMENT AND AUTHORITIES

**A.    Plaintiff fails to show that South Carolina law applies to interpreting and enforcing the arbitration agreement.**

Despite acknowledging that Austin's Open Door policy (which includes the arbitration agreement) expressly states it is "governed by, interpreted under and construed in accordance with" Texas law [Doc. 5], Plaintiff opposes Austin's Motion to Compel almost exclusively (with one exception, discussed below) under South Carolina law. He contends that South Carolina law governs "the threshold issue of whether there is a contract" (despite the choice-of-law clause stating Texas law governs) because South Carolina is where Plaintiff signed the agreement and performed his work for Austin. [Doc. 6 at 3].

The only case Plaintiff cites for this proposition is *Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 621 S.E.2d 352 (S.C. 2005). But this case actually states the opposite. The

*Stonhard* Court reviewed a New Jersey choice-of-law clause, and looked to New Jersey law to determine how a contractual non-compete provision should be construed. *Id.* at 353–54. The *Stonhard* court only applied South Carolina law when evaluating whether the provision, as construed under New Jersey law, should be enforced in accordance with South Carolina's <u>public policy</u>. *Id.* at 354. Therefore, consistent with South Carolina's general favor towards choice of law clauses, see *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011) (citations omitted), Texas law governs such preliminary questions as whether the parties agreed to the Open Door policy, what the Open Door policy means, and whether the Open Door policy should be enforced.

**B.     Plaintiff's contention that there was never a binding arbitration agreement between the parties because he did not have an "employment contract," is without merit.**

Plaintiff claims that there is no binding arbitration agreement because there was never a binding "employment contract" between the parties. Plaintiff argues that because the job application states that only "the president of Austin Industries may enter into an employment contract with any person," and because he never met with or communicated with the company president, he never entered into a binding employment contract or any related arbitration agreement. [Doc. 5 at 3–4]. Plaintiff further argues that the term "employment contract," as used in Plaintiff's job application, is ambiguous because it could refer to "a variety of contracts in the employment setting," including an arbitration agreement. [Doc. 5 at 3]. These arguments are meritless.

There is no basis for suggesting that the phrase "employment contract" is ambiguous in a contract unless the contract expressly defines it, despite its straightforward meaning. *See Raines v. Seattle Sch. Dist. No. 1*, 625 F. App'x 809, 812 (9th Cir. 2015) (per curiam) (unpublished) (holding the term "employment contract" is not "confusing or technical" such that a jury had to

be instructed about the term's meaning). In addition, the Open Door policy itself states that "Neither Austin nor Austin Open Door guarantee employment or create a contract for the employment of any person . . . " [see Doc. 5-1]. Therefore, it is clear that Open Door was not an employment contract for which the signature of the Company president was required, to which the employment application refers. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam) (observing that arbitration agreements in employment can be enforceable despite being "stand-alone," so long as they contain mutually binding promises). Rather, it is a stand-alone agreement to arbitrate.

Importantly, as Plaintiff signed the application which included the arbitration agreement, worked for Austin for a period of time, was paid for his work, and now attempts to litigate claims regarding his employment and employment termination, it is far too late for him to claim no arbitration agreement exists between him and Austin . *See P. McGregor Enters., Inc. v. Denman Bldg. Prods., Ltd.*, 279 S.W.3d 717, 723 (Tex. App.—Amarillo 2007, pet. denied) (citations omitted) ("[U]nless prohibited by a statute of frauds, an agreement can be inferred from a party's conduct."); *see also Rolandi v. City of Spartanburg*, 363 S.E.2d 385, 386–87 (S.C. Ct. App. 1987) ("An implied in fact contract is a contract which arises when the assent of the parties to the agreement is manifested by conduct.").

Moreover, under both South Carolina and Texas law, the parties have a binding, independent agreement to arbitrate Plaintiff's claims based on their mutual promises to arbitrate in Open Door. Under South Carolina law, when parties have made a mutual promise to arbitrate claims arising between each other, sufficient consideration exists to support a stand-alone arbitration agreement. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (citing *Rickborn v. Liberty Life Insurance Co.*, 321 S.C. 291, 468 S.E.2d 292, 300 (S.C. 1996)). Both

Plaintiff and Austin agreed to waive their rights to pursue certain claims in court, and agreed to resolve all such claims through the Open Door policy's arbitration process. Consequently, South Carolina law empowers Austin to compel this dispute into arbitration pursuant to the parties' agreement. *Id.*

Under Texas law, forming an enforceable arbitration agreement is straightforward in an employment relationship. If an employee is given notice of an arbitration agreement at the commencement of, or during, an employment relationship, the agreement is accepted and binding if the employee continues working after the notice. *In re Dall. Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162–63 (Tex. 2006) (per curiam); *Halliburton*, 80 S.W.3d at 568–69. That is what happened here, so the arbitration agreement is enforceable.

## C.     Plaintiff failed to establish an unclean hands defense to enforcing his agreement to arbitrate.

Despite notice of the Open Door policy when he completed his job application (including notice "that Open Door requires as its last step the binding arbitration of employment disputes regarding legally protected rights . . ."), and his opportunity to request a copy of that policy, Plaintiff asserts an unclean hands defense. Plaintiff contends that he was never affirmatively told that the Open Door policy involved mandatory arbitration (despite the application's reference to the arbitration requirements on multiple occasions).[1] He then claims, without any reference to legal authority, that this justifies not enforcing his agreement to arbitrate under the doctrine of unclean hands. [Doc. 6 at 4–5]. Plaintiff's assertion fails for multiple reasons.

---

[1] Although Plaintiff contends he never received a copy of the Open Door policy itself, on February 24, 2014, Plaintiff signed an acknowledgment that he attended Austin's employee orientation, discussed and fully understood a variety of subjects including employee rights and responsibilities, and received a copy of Austin's Open Door policy, which was attached to the acknowledgement he signed. A copy of that acknowledgment is attached as Exhibit A to this Reply. Nevertheless, Plaintiff's unclean hands argument fails even if it is assumed that Plaintiff never received a copy of the Open Door policy.

By agreeing to the Open Door policy, Plaintiff also agreed that challenges to the enforceability of this agreement must be decided by an arbitrator, rather than this Court. [Doc. 5-1] Because Open Door expressly states that "[t]he enforceability of the arbitration agreement is to be decided by the arbitrator" [Doc. 5-1], Plaintiff waived any rights to have this Court adjudicate that defense. *See IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 793 (Tex. App.—El Paso 2012, no pet.) (finding that a contractual provision providing that "all claims challenging the validity or enforceability of this Agreement" are subject to arbitration, "clearly and unmistakably" required that validity- or enforceability-related challenges be decided by an arbitrator, rather than a court).

In the event that the Court considers the merits of Plaintiff's contentions, Plaintiff has not demonstrated "unclean hands." In order to prevail on a defense of unclean hands, Plaintiff must show "conduct [that] has been unconscientious, unjust, or marked by a want of good faith, or [that has otherwise] violated the principles of equity and righteous dealing." *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding).[2] Plaintiff makes no such showing here, and only relies on an alleged lack of affirmative representations regarding Open Door's arbitration provisions.[3] Plaintiff does not, and cannot, claim that he did not have notice in his job application that Austin's Open Door policy required arbitration of any employment-related claims. Further, Plaintiff had notice and the opportunity to make a simple request in writing for the policy. Given this notice, he cannot decline to be

---

[2] South Carolina law uses a similarly restrictive standard for the defense, requiring proof that the party against whom the defense is raised "acted unfairly in a matter that is the subject of the litigation to the prejudice of the [opponent]." *Ingram v. Kasey's Assocs.*, 531 S.E.2d 287, 292 n.2 (S.C. 2000).

[3] Plaintiff also relies on Affidavits of two former employees, who state that they did not receive copies of Open Door or know how employees could request such copies, and only knew that Open Door discussed how internal complaints could be handled up the chain of command. However, this evidence regarding the alleged knowledge or experience of other employees is wholly irrelevant to whether the evidence regarding **Plaintiff** demonstrates an enforceable arbitration agreement, which it does.

bound by Open Door policy's terms, nor prove the requisite unfair conduct to support an unclean hands defense. *See December Nine*, 225 S.W.3d at 700 (quoting *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam)) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."). Plaintiff makes no showing of fraud, misrepresentation or deceit which would render the contract unenforceable.

At best, Plaintiff's Response and its accompanying affidavits provide evidence that only certain provisions of Open Door were specifically discussed in orientation – namely, its provisions allowing complaints to be reported to supervisors, and then up the chain of command at Austin (another purpose of the Open Door policy). [*See* Doc. 6 at 4–5 and Doc. 6-1, 6-2, and 6-3]. However, this does not provide evidence of fraud, misrepresentations, or deceit, particularly in the face of the undisputed evidence that Plaintiff was given notice of Open Door and how he could obtain a copy of Open Door, as well as **specific notice of the arbitration agreement**, in his employment application. Plaintiff's own failure to request a copy of Open Door or his own lack of understanding of Open Door's terms cannot justify an unclean hands defense.[4] *See Estes v. Republic Nat'l Bank of Dall.*, 462 S.W.2d 273, 276 (Tex. 1970) ("[T]he general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is not a ground for avoiding it."). Accordingly, Plaintiff's unclean hands defense fails.

---

[4] Although Plaintiff's Response contends "he inquired about the meaning of the [arbitration] provision" [Doc. 6 at 1], his Affidavit does not say he asked questions or made any inquiries about arbitration. Rather, it says only what general information was provided at orientation. Plaintiff also contends he was not given a copy of his personnel file when he requested it <u>after</u> his employment terminated. However, this does not provide evidence of fraud, misrepresentation, or deceit in the <u>formation</u> of the arbitration agreement.

**D.     Plaintiff's adhesion-contract defense has no merit.**

Plaintiff also argues that the Open Door policy constitutes an unconscionable adhesion contract under South Carolina law. [Doc. 6 at 5–7]. Plaintiff's Response makes no mention of Texas law. The Texas Supreme Court, however, has already rejected an argument analogous to Plaintiff's. *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) (requiring an additional showing beyond "gross disparity in bargaining power" and the "take it or leave it" nature of an arbitration provision to find an arbitration agreement unconscionable for at-will employees). In addition, as with Plaintiff's unclean hands argument addressed above, Plaintiff has already agreed to present this defense to an arbitrator rather than to this Court or any other court. *See IHS Acquisition No. 131*, 387 S.W.3d at 793.

Moreover, this argument also lacks merit under South Carolina law. Adhesion contracts are not per se unconscionable under South Carolina law. *See Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 669 (S.C. 2007). For an arbitration agreement to be unconscionable, even when it is an adhesion contract, it must contain "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id.* at 668. Compelling a plaintiff to seek arbitration before a non-judicial forum, by comparison, is not sufficient. *See Lucey v. Meyer*, 736 S.E.2d 274, 285 (S.C. Ct. App. 2012) (upholding an arbitration clause in an employment contract when, aside from the arbitration requirement, the "sole limitation" it contained involved "the presentment of live witnesses" without otherwise restricting evidence or testimony).

Plaintiff relies on the *Hooters of America, Inc. v. Phillips* case, which he attempts to equate with concerns about the level of choice and surprise the employee had with respect to the agreement to arbitrate itself. [Doc. 6 at 5–6] (citing 39 F. Supp. 2d 582, 614–15. (D.S.C. 1998)). But those information-based concerns were not the primary concern of the *Hooters* court. On the

contrary, the court specifically highlighted as "more important" the substantive and procedural restrictions found within the arbitration agreement. *Hooters*, 39 F. Supp. 2d at 614. Notably, the plaintiff's "rights to compensatory damages, backpay relief, front pay relief, punitive damages, and attorney's fees" for her claims were "eliminated or substantially curtailed" under the arbitration agreement. *Id.* In addition, the plaintiff's procedural ability to prove her case was weighed down by a higher burden of proof than she would face in a court, and by "numerous unfair procedural rules" that, for instance, limited her discovery rights, gave the employer greater power over selecting arbitrators, and allowed the employer "total control over the official record." *Id.* Here, Plaintiff has made no arguments that any specific terms in the Open Door policy or arbitration agreement make it unconscionable, and no such terms are actually present. Thus, there is no support for Plaintiff's contention that the arbitration agreement is unconscionable and unenforceable.

E. **Plaintiff's final attack on the arbitration agreement, centering on general language in the application regarding Defendant's right to modify "rules and regulations," also fails.**

Plaintiff's final argument, utilizing both South Carolina and (for the only time) Texas law, contends that the Open Door policy's arbitration provisions are not enforceable because of Austin's purported right to modify the agreement at any time. As with Plaintiff's enforceability-related defenses of unclean hands and unconscionable adhesion contract, this defense has been expressly reserved by agreement for an arbitrator, not this Court. *See IHS Acquisition No. 131*, 387 S.W.3d at 793.

Even if the Court were to find that Austin's promise to be bound by the Open Door policy was illusory (which is denied), there still would be sufficient consideration to support the arbitration agreement in this case. The South Carolina Court of Appeals has held that continued at-will employment after the implementation of a mandatory arbitration program is sufficient

consideration to support the agreement to arbitrate. *See Towles v. United Healthcare Corp.*, 524 S.E.2d 839, 845 n.4 (S.C. Ct. App. 1999). For this additional reason, Plaintiff's "illusory" argument lacks factual and legal support.

### 1. South Carolina law

Plaintiff's reliance on the *Hooters* case to bolster this illusory argument is misplaced. [Doc. 6 at 7–8]. In *Hooters*, the defendant reserved unfettered discretion to alter or amend the agreement in the arbitration clause itself, such as by Rule 24–1 of the rules and procedures for the contemplated arbitration process. 39 F. Supp. 2d 582, 617–18. Looking at the four corners of the arbitration agreement specifically, the court concluded that the arbitration agreement contained an illusory promise. *Id.* at 618. Unlike *Hooters*, Plaintiff fails to point to any provision in the Open Door policy that would allow Austin to modify or revoke its arbitration agreement. Moreover, the Open Door policy is silent with respect to either party's ability to amend, revoke or rescind its terms.[5] Because Plaintiff's challenge is not directed specifically to the arbitration provision in the stand-alone Open Door policy, his argument that Austin's agreement to arbitrate is illusory fails. *See, e.g.*, *Carter v. MasTec Servs. Co.*, 2010 U.S. Dist. LEXIS 10338, at *10 (D.S.C. Feb. 5, 2010) (finding that language related to the modification of at-will employment "has nothing to do" with the argument that an arbitration agreement was illusory).

### 2. Texas law

Plaintiff contends that the Fifth Circuit's decision in *Nelson v. Watch House International, L.L.C.* demonstrates the Open Door policy is illusory and unenforceable, based on

---

[5] Because the Open Door policy clearly and unambiguously provides that both Austin and Plaintiff are mutually obligated to arbitrate any disputes covered by the policy, "the court does not look beyond the four corners to discern the parties' intentions." *Silver v. Abstract Pools & Spas, Inc.*, 658 S.E.2d 539, 543 (S.C. Ct. App. 2008) (citing *Keith v. River Consulting, Inc.*, 618 S.E.2d 302, 305 (S.C. Ct. App. 2005)).

Austin's purported ability to make "immediate, unilateral, prospective changes" to the policy. [Doc. 6 at 8, citing 815 F.3d 190 (5th Cir. 2016)]. Plaintiff's argument glosses over a critical detail about the modification right involved in *Nelson*: that right was <u>expressly included</u> in the contested arbitration agreement itself.[6]  815 F.3d at 191–92.  In the present case, by contrast, the Open Door policy has <u>no such modification right</u> included in its language; instead, Plaintiff tries to read language from his separate job application into the Open Door policy.  Nothing in Plaintiff's Response demonstrates that arbitration agreements, when they otherwise contain no express modification rights for anyone (let alone the employer in particular), can only be enforced if they nevertheless repudiate a modification right found in a separate, unrelated document.

The Texas Supreme Court rejected this very argument in *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam).  In *24R,* the parties contested the enforceability of an arbitration agreement that, like the Open Door policy, "ma[de] no mention of the right to change its terms."  However, the plaintiff contended that an employee manual, which was not incorporated into the arbitration agreement (again, paralleling the Open Door policy), rendered the arbitration agreement unenforceable because it gave the employer the "right to revoke, change, or supplement [policies] at any time without notice." *Id.*  The Texas Supreme Court rejected this argument and enforced the arbitration agreement, finding that the revocation and modification rights invoked by the manual were not incorporated into the arbitration agreement, whether expressly or by reference. *Id.* at 567–68.[7]

---

[6] The two other cases the Response briefly mentions in relation to *Nelson* similarly had a modification right expressly incorporated into the disputed arbitration agreement. *See Lizalde v. Vista Quality Markets*, 746 F.3d 222, 224 (5th Cir. 2014); *Halliburton*, 80 S.W.3d at 569–70.

[7] In reaching this argument, the Court distinguished its prior decision in *In re Halliburton*, which emphasized the presence of a "savings clause" regarding the employer's modification rights, as involving an "explicit[] reservation

*24R* dictates the correct result here. The Open Door policy contains no provision reserving Austin's (or Plaintiff's) right to modify or otherwise alter the policy, it does not incorporate Plaintiff's job application by reference, and it otherwise does nothing to render itself illusory. Because such an agreement was found enforceable by the Texas Supreme Court in *24R*, the Open Door policy is necessarily enforceable as well. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) ("It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications.").

## II.     CONCLUSION

Based on the foregoing, Defendant Austin Industrial, Inc. respectfully requests that the Court grant its Motion in its entirety, compel Plaintiff to resolve his claims through arbitration, dismiss this action, or in the alternative stay this case pending arbitration's completion, and grant any additional relief that the Court deems appropriate.

---

of] the right to unilaterally modify or discontinue the dispute resolution program." *Id.* at 567 (citing 80 S.W.3d at 569–70).

| | |
|---|---|
| Dated: March 9, 2018 | Respectfully submitted, |
| | /s/ *Matthew Brown* |
| | Matthew Brown, S.C. Bar No. 78339 |
| | Fed. Bar No. 11493 |
| | LITTLER MENDELSON, P.C. |
| | Bank of America Corporate Center |
| | 100 North Tryon Street, Suite 4150 |
| | Charlotte, North Carolina 28202 |
| | Telephone: (704) 972-7037 |
| | Facsimile: (704) 973-0572 |
| | Katherine E. Flanagan, TX State Bar. No. 788945* |
| | Fed. Bar No. 17542 |
| | LITTLER MENDELSON, P.C. |
| | 1301 McKinney Street, Suite 1900 |
| | Houston, Texas 77010 |
| | (713) 951-9400 (Telephone) |
| | (713) 513-5960 (Facsimile) |
| | kflanagan@littler.com |
| | (*Subject to admission *pro hac vice*.) |
| | |
| | Attorneys for Defendant |
| | Austin Industrial, Inc. |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically notify Plaintiff's counsel as follows:

Joseph Daniel Dickey, Jr.
Dickey Law Group
1817 Hampton Street
Columbia, SC 29201

Bryn C. Sarvis
3424 Augusta Highway
Gilbert, SC 29054

*Attorneys for Plaintiff*

/s/ *Matthew Brown*
Matthew Brown

Firmwide:153333737.1 016768.1086