# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Timothy Ray, | Civil Action No.: 3:18-cv-00392-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Austin Industrial, Inc., | |
| Defendant. | |

This matter is before the court on Defendant's Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay pursuant to Texas law (or, alternatively, South Carolina law or 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act), and Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 5.) For the reasons stated herein, the court **GRANTS** Defendant's Motion to Compel Arbitration, and therefore, **DISMISSES** the case without prejudice.

## I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on Defendant's allegations that there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy herein exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs. (ECF No. 1 at 3.) Defendant is a corporation organized under the laws of Delaware with its principal place of business in the state of Texas. (ECF No. 1-2 at 3 ¶ 4.) Plaintiff is a citizen and resident of Lexington County, South Carolina. (ECF No. 1-1 at 6 ¶ 1.) As such, this court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and authority to adjudicate the dispute.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a citizen of South Carolina (ECF No. 1-1.), and Defendant is a corporation organized under the laws of Delaware with its principal place of business in the state of Texas (ECF No. 1-2, ¶ 4). Plaintiff, a former employee of Defendant, alleges he was fired for threatening to report unsafe work conditions to a customer. (*See* ECF No. 1-1 at 7.) On November 16, 2017, Plaintiff commenced this action by filing a suit in the Court of Common Pleas for Richland County, South Carolina, Case No. 2017-CP-40-07019 ("Complaint"). (ECF No. 1-3 at 5.) The Complaint alleges three causes of action: (1) wrongful discharge, breach of employee handbook/contract; (2) wrongful discharge in violation of public policy; and (3) slander. (ECF No. 1-1 at 7, 10, 11.) On January 11, 2018, Plaintiff personally served Defendant with copies of the Complaint and related Summons. (ECF No. 1-3 at 5.) On February 9, 2018, Defendant filed a Notice of Removal. (*Id.*) On February 16, 2018, Defendant filed its Motion to Compel Arbitration and Dismissal, or in the Alternative, to Stay stating that Plaintiff agreed to submit all claims he currently asserts to arbitration. (ECF No. 5.) On March 2, 2018, Plaintiff filed his Response in Opposition to Defendant's Motion. (ECF No. 6.) On March 9, 2018, Defendant filed its Reply in Support of its Motion. (ECF No. 7.)

Defendant alleges that Plaintiff agreed to the arbitration terms of Defendant's Open Door policy. (ECF No. 5 at 2.) The Open Door policy requires binding arbitration of all employment disputes that arise from or relate to the termination of employment and other claims, except as specifically excluded in this policy, brought by former employee-owners. (*See* ECF No. 5-1 at 2.) The policy also requires that it "be governed by, interpreted under[,] and construed in accordance with the laws of the state of Texas, regardless of any conflict of law rules under Texas law." (*Id.*) Defendant alleges that Plaintiff accepted the terms of the Open Door policy

when he completed his employment application. (ECF No. 5 at 3.) Plaintiff alleges he was never advised that his employment would be contingent upon signing an agreement to arbitrate and that the policy was not properly presented to Plaintiff. (ECF No. 6 at 1, 5-6.)

### III. LEGAL STANDARD

A. Standard of Arbitration under the Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16,[1] "governs the rights and responsibilities of the parties with respect to an arbitration agreement." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). "Under the [FAA], a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right." *Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). The FAA reflects "a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Pursuant to this liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867

---

[1] Specifically, § 2 of the FAA provides that agreements to arbitrate found in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides the means by which a party may seek a stay of pending litigation and a court order compelling arbitration. *Id.* at § 3. Under § 4 of the FAA, a party, in response to an opposing party's refusal to arbitrate under a contract, may "petition in any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in the agreement." *Id.* at § 4.

F.2d 809, 812 (4th Cir. 1989) (citation omitted). Thus, the court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

Despite these policies favoring arbitration, federal courts have the authority to evaluate the validity of arbitration agreements. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). "If a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under [9 U.S.C.] § 4." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 64 (2010). Moreover, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract . . . unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

B. <u>Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)</u>

A motion to dismiss for lack of subject matter jurisdiction filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. *See* 28 U.S.C. § 636(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

4

C. <u>Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim upon which relief may be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). *See also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Pursuant to Rule 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. DISCUSSION

A. <u>Defendant's Motion to Compel Arbitration and Dismiss or to Stay the Matter</u>

"A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law; (3)

the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). The FAA reflects a liberal federal policy favoring arbitration, but federal courts have the authority to evaluate the validity of arbitration agreements. *See Moses*, 460 U.S. at 24; *Prima Paint*, 388 U.S. at 403-04. Because Plaintiff has challenged the validity of the arbitration agreement under 9 U.S.C. § 2, the court "must consider the challenge before ordering compliance with that agreement under [9 U.S.C.] § 4." *Rent-A-Center*, 561 U.S. at 71. Specifically, § 2 of the FAA provides that agreements to arbitrate found in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

B. Plaintiff's Arguments Under 9 U.S.C § 2

Plaintiff does not dispute that his claims are within the scope of the arbitration agreement if the court finds that the agreement is enforceable under the applicable law. (ECF No. 6 at 3.) However, Plaintiff first asserts that South Carolina law should determine whether there is a contract that stipulates arbitration. (ECF No. 6 at 3 (citing *Stonhard, Inc. v. Carolina Flooring Specialist, Inc.*, 621 S.E.2d 352 (S.C. 2005).) Second, Plaintiff argues there is no contract due to the express language in the employment application. (*Id.* at 3-4.) Third, Plaintiff believes the arbitration agreement should not be enforced as an equitable matter due to Defendant's unclean hands. (*Id.* at 4-5.) Fourth, Plaintiff argues the arbitration agreement is an unconscionable adhesion contract. (ECF No. 6 at 5-7 (citing *Hooters of Am., Inc. v. Phillips*, 39 F. Supp. 2d 582 (D.S.C. 1998)).) Finally, Plaintiff argues that the arbitration agreement is unenforceable due to Defendant reserving the right to "amend, modify, or revoke its rules and regulation at any time."

(ECF No. 6 at 7-8 (citing *Nelson v. Watch House, Int'l, LLC*, 815 F.3d 190 (5th Cir. 2016).)

      1. <u>Choice of Law: South Carolina or Texas Law</u>

      South Carolina law does not apply, and therefore, Texas law governs this dispute because of the choice-of-law provision within the Open Door policy. In Plaintiff's assertion that South Carolina law applies (ECF No. 6), he misrepresents *Stonhard*. In *Stonhard*, the South Carolina Supreme Court determined that a non-compete agreement containing a choice-of-law provision may be construed according to the law of another state. *See Stonhard*, 621 S.E.2d at 353 (citing *Standard Register Co. v. Kerrigan*, 119 S.E.2d 533, 541-42 (S.C. 1961)). "But if the resulting agreement is invalid as a matter of law or contrary to public policy in South Carolina, our courts will not enforce the agreement." *Stonehard*, 621 S.E.2d at 353. The *Stonhard* court determined that the non-compete agreement did not contain a geographic limitation, and the court was unable to find a single case from New Jersey in which a state court added a geographic term when one was previously omitted. *Id.* at 354. Because of these factors, the court rendered the non-compete agreement unenforceable as a matter of public policy. *See id.* (holding that a non-compete agreement failed to limit a covenant, and to add and enforce such a term would require the court to bind the parties to a term that did not reflect the parties' original intention and was unenforceable under public policy).

      While it is true that courts must look to general principles of state law when determining whether the parties are subject to an enforceable arbitration contract, Plaintiff has failed to raise any arguments as to whether South Carolina law or public policy would bar the enforceability of the arbitration agreement. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 420 n.4 (4th Cir. 2000); *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 363 (S.C. 2001). Therefore, Texas law, as opposed to South Carolina law, governs preliminary

questions regarding the Open Door policy.

      2. <u>At-Will Employee Arbitration Agreement</u>

The Open Door policy is a stand-alone contract and is enforceable. A party seeking to compel arbitration must establish that a valid arbitration agreement exists between the parties. *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010). If an arbitration agreement exists, "[t]he party seeking to avoid arbitration then bears the burden of proving its defenses against enforcing an otherwise valid arbitration provision." *Id.* at 566. "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam). A mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement. *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007).

The Open Door arbitration agreement is a stand-alone contract that does not incorporate the employee application. (*See* ECF No. 5-1 at 2-3.) Although language in the employee application recognizes the existence of the arbitration agreement (ECF No. 5-2 at 3), this does not diminish the validity of the arbitration agreement as a stand-alone contract. *See In re 24R*, 324 S.W.3d at 568. In this case, Plaintiff and Defendant have mutually agreed to arbitrate because Plaintiff signed two documents that would have made the Defendant aware of the arbitration agreement, the employment application (ECF No. 5-2 at 2) and employee orientation materials (ECF No. 7-1 at 2). Under Texas law, if an employee is given notice of an arbitration agreement at the commencement of, or during, an employment relationship, the agreement is accepted and binding if the employee continues working after the notice. *In re Dall. Peterbilt, Ltd., L.L.P.*, 196 S.W. 3d 161, 162-63 (Tex. 2006). Plaintiff was given notice of an arbitration agreement at the commencement of his at-will employment and continued working. Therefore,

8

there is a mutual and binding arbitration agreement.

        3. Unclean Hands Defense and Enforcement

Challenges regarding the enforceability of the arbitration agreement are to be decided by the arbitrator, not the court. (ECF No. 5-1 at 2.) Plaintiff lists several factual allegations to argue that Defendant acted with unclean hands, however, he cites no legal authority to justify whether these allegations are sufficient to make the arbitration agreement unenforceable. (*See* ECF No. 6 at 3-4.) Importantly, the Open Door policy states that "the enforceability of the arbitration agreement is to be decided by the arbitrator." (ECF No. 5-1 at 2.) When an arbitration agreement possesses language stating that "any and all claims challenging the validity or enforceability of [the] [a]greement are subject to arbitration," Texas courts have determined that this language "clearly and unmistakably" requires that enforceability-related challenges be decided by the arbitrator rather than the court. *See IHS Acquisitions No. 131, Inc. v. Iterralde*, 387 S.W.3d 785, 793 (Tex. App. 2012) (citations omitted); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010) (stating an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce and can, if proper, be enforced by the court). The Open Door policy requires enforceability of the arbitration agreement to be decided by the arbitrator (ECF No. 5-1 at 2), and therefore, an analysis on the merits of the allegation will not be conducted by the court.

        4. Unconscionability of the Adhesion Contract

There is no substance to Plaintiff's position that the arbitration agreement is unconscionable. Plaintiff's argument does not reference Texas law but misrepresents another case. (*See* ECF No. 6 at 5-7.) Plaintiff relies on *Hooters of Am., Inc. v. Phillips*, and tries to equate the current case to the drastic disproportionality in bargaining power between the parties

in *Hooters*. (*Id.*) The *Hooters* court determined "Hooters materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft rules and to do so in good faith." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). In *Hooters*, the rules were so one-sided that their only possible purpose was to undermine the neutrality of the arbitration proceeding. *Id.* The rules provided a mechanism for selecting a panel of three arbitrators in order to ensure a biased decisionmaker.[2] *Id.* at 938-39. Plaintiff has grossly fabricated the applicability of *Hooters* to the current arbitration dispute and has made no arguments that the terms of the Open Door policy are unconscionable. (*See* ECF No. 6.) Plaintiff tries to depict a series of events he believes would constitute a disparity in bargaining power. (*Id.* at 6.) However, Texas law requires an additional showing beyond a gross disparity in the bargaining power of an arbitration provision to find that an arbitration agreement is unconscionable, a burden Plaintiff has also failed to meet. (*See* ECF Nos. 1, 6.) Therefore, the arbitration agreement is conscionable and Plaintiff's argument is without merit. *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)

     5. Right to "Amend, Modify, or Revoke Arbitration at Any Time" and Enforcement

Challenges regarding the enforceability of the arbitration agreement are to be decided by the arbitrator, not the court. (ECF No. 5-1 at 2.) As discussed above, the Open Door policy requires enforceability of the arbitration agreement to be decided by an arbitrator, and therefore, an analysis on the merits of this allegation will not be conducted by the court.[3] (*Id.*)

---

[2] Leading arbitration experts testified that Hooters' rules were inconsistent with the concept of fair and impartial arbitration and that reputable designating organizations, such as the American Arbitration Association (AAA), would refuse to administer a program so unfair and one-sided as Hooters. *See Hooters*, 173 F.3d at 936.

[3] The court notes that Plaintiff continues his trend of misrepresentation by claiming the Open Door policy can be changed to either immediately or retrospectively disadvantage Defendant's employees (ECF No. 6), but there is no language in the Open Door policy that substantiates

6. The Court's Review

Arbitration is required in accordance with the FAA and Texas law. "A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87; *Whiteside*, 940 F.2d at 102. In this case, there is undoubtedly a dispute between the parties; there is a written agreement which includes an enforceable arbitration provision under the general principles of contract law (ECF No. 5-1 at 2-3; ECF No. 5-2 at 3); Defendant's business involves interstate commerce; and Plaintiff has refused to arbitrate the dispute (ECF No. 6). (*See* ECF Nos. 1, 5, 6.)

To enforce arbitration under Texas law, two elements must be shown: (1) the parties entered into an enforceable arbitration agreement; and (2) the claims at issue are within the arbitration agreement's scope. *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). As discussed by the court above, it is without question that the parties entered into an enforceable arbitration agreement under Texas law. The Open Door policy encompasses Plaintiff's first two claims for wrongful termination (ECF No. 5-1 at 3), and the Texas Supreme Court has held that

---

Plaintiff's claim. (*See* ECF No. 5-1 at 2-3.) Neither does the Open Door policy mention or incorporate Plaintiff's job application language of "the right to amend, modify, or revoke [the application's] rules and regulations at any time" (ECF No. 5-1 at 2-3). *See In re 24R. Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (stating that although the employee manual may express that employer retains the right to change personnel policies, the arbitration agreement makes no mention of the right to change its terms, nor does it mention or incorporate by reference the employee manual).

defamation[4] claims can be "intertwined with [a plaintiff's] employment and termination." *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 516 (Tex. 2006). Therefore, Plaintiff's slander claim is also within the scope of the arbitration agreement (ECF No. 5-1 at 3) and should be submitted to arbitration.

Upon the granting of a motion to compel arbitration, the court must determine whether to stay or dismiss Plaintiff's lawsuit. *See* 9 U.S.C. §§ 3-4 (stating that when an arbitration agreement governed by the FAA covers claims that have been asserted in a lawsuit, the court, having jurisdiction over the case, must compel arbitration and either dismiss the action or stay further judicial proceedings until arbitration has been held). Where all of the claims pled by a plaintiff are subject to an arbitration agreement, the court should dismiss the claims rather than merely stay the judicial proceedings. *See Choice Hotels Int'l v. BSR Tropicana Resort*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Upon review of the terms of the arbitration provision at issue in this matter (ECF No. 5-1 at 2-3), the court finds that all of Plaintiff's causes of action in his Complaint are subject to arbitration (ECF No. 1). (*See* ECF No. 5-1 at 3 ("If your dispute involves a legally protected right . . . you may request arbitration. Examples (without limitation) of legally protected rights include any claim of wrongful termination, breach of contract or implied contract, discrimination, . . . violations of public policy, any federal or *state statutory or common law*, . . . defamation . . . .") (emphasis added).) Moreover, Plaintiff did not offer any arguments or controlling legal authority regarding whether a stay would be more appropriate than dismissal of

---

[4] Under Texas law, slander is a defamatory statement expressed orally or published to a third person without legal excuse. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "In suits brought by private individuals, truth is an affirmative defense to slander." *Id.* (citation omitted).

his claims under these circumstances. (*See* ECF No. 6.) Accordingly, the court dismisses Plaintiff's Complaint without prejudice.

## V. CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant's Motion to Compel Arbitration, **DENIES AS MOOT** the Motion to Stay, and therefore, **DISMISSES** the case without prejudice. (ECF No. 5.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 29, 2018
Columbia, South Carolina